The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



**/S/ RUSS KENDIG**

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) CHAPTER 7 |
| BRIAN E. GILMORE & | ) |
| | ) CASE NO. 09-64893 |
| TIFFANNY R. GILMORE, | ) |
| | ) JUDGE RUSS KENDIG |
| Debtors. | ) |
| | ) |
| | ) **MEMORANDUM OF OPINION** |
| | ) |

On December 12, 2009, the United States Trustee filed a motion to dismiss this case for abuse under 11 U.S.C § 707(b)(1) and (3). An evidentiary hearing was held on March 23, 2010. Scott Belhorn appeared for the United States Trustee, and Denise Bartlett and Melissa J. Acayan appeared for debtors Brian E. Gilmore and Tiffany E. Gilmore ("debtors"). The debtors and chapter 13 trustee Toby L. Rosen ("chapter 13 trustee") testified at the hearing. The United States Trustee's motion is now before the Court.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## LEGAL BACKGROUND

The United States Trustee argues that the debtors' case should be dismissed or converted

# LEGAL BACKGROUND

The United States Trustee argues that the debtors' case should be dismissed or converted to a chapter 13 because the totality of the debtors' circumstances demonstrate an abuse of the bankruptcy process under 11 U.S.C. § 707(b)(1) and (3). Section 707(b)(1) and (3) provide in pertinent part:

> (1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter . . . .
>
> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter . . . the court shall consider . . . [whether] the totality of the circumstances of the debtor's financial situation demonstrates abuse.

Section 707(b) was amended by the passage of the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA"). Prior to 2005, section 707(b) required a showing of "substantial" abuse before a case could be dismissed or converted and established a presumption "in favor of granting the relief requested by the debtor." Both the requirement that abuse be "substantial" and the presumption that relief be granted were eliminated by BAPCPA. In re Mestemaker, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007). BAPCPA also created the "means test" of section 707(b)(2), which creates a presumption of abuse for above median income debtors. Id. at 865.

In determining whether a debtor's case should be dismissed under section 707(b)(1) and (3), bankruptcy courts in this district have applied the factors used by the Sixth Circuit Court of Appeals in pre-BAPCPA cases. E.g., In re Srikantia, 417 B.R. 505, 508–509 (Bankr. N.D. Ohio 2009) ("[P]re-BAPCPA decisions provide sound guidance and are instructive in evaluating motions to dismiss."); Mestemaker, 359 B.R. at 856; In re Simmons, 357 B.R. 480, 489 (Bankr. N.D. Ohio 2006). However, while the basic character of the analysis is unchanged, courts have recognized that the 2005 amendments have lowered the United States Trustee's burden. Mestemaker, 359 B.R. at 856 ("The court emphasizes, however, that Congress has clearly lowered the standard for dismissal in changing the test from 'substantial abuse' to 'abuse.'").

A determination that abuse has occured can be predicated on either a lack of honesty or a lack of need. In re Krohn, 886 F.2d 123, 126 (6th Cir. 1989)). In determining whether a debtor is honest, courts should determine if the debtor is "merely

2

seeking an advantage over his creditors, or instead is 'honest' in the sense that his dealings with creditors have been marked by essentially honorable and undeceptive dealings." In re Behlke, 358 F.3d 429, 434 (6th Cir. 2004). Factors to be considered in determining whether a debtor is honest include the debtor's good faith and candor in filling out schedules and other documents, whether the debtor has engaged in "eve of bankruptcy" purchases, and whether the debtor was forced into chapter 7 by unforeseen or catastrophic events. Krohn, 886 F.3d at 126.

The primary factor in deciding whether a debtor is needy is whether the debtor can repay his debts out of his future earnings. Krohn, 886 F.2d at 126–127 ("That factor alone may be sufficient to warrant dismissal.") Courts have dismissed the cases of debtors who can make substantial payment to their general unsecured creditors in a chapter 13 plan. Behlke, 358 F.3d at 437 (pre-BAPCPA opinion dismissing case where debtor could pay 14% dividend to general unsecured creditors over 36 month plan); Mestemaker, 359 B.R. at 857 (dismissing case where debtors could pay 10% to 15% dividend to general unsecured creditors). Other factors the court may consider include whether the debtor enjoys a stable source of income, whether the debtor's expenses can be reduced, and whether the debtor's financial situation is the result of an unforeseen catastrophic event. Krohn, 886 F.2d at 126–128.

## FACTUAL BACKGROUND

Mr. Gilmore is employed as the special finance manager at Mullinax Ford. His income consists of straight commission. He earns a percentage of the profit resulting from originating and closing sub-prime automobile loans and for the sale of products such as gap insurance and car warranties. Mr. Gilmore's September 2009 pay stub indicates that he also sometimes receives performance-based bonuses known as "spiffs." Every month, he is paid an advance against his commission, which is referred to as a "draw." Presently, his draw is $2,500 per month.

Mr. Gilmore testified that he made approximately $127,000 in 2007 and $110,000 in 2008. Toward the end of 2008, lenders tightened their credit criteria because of the general financial crisis. As a result, Mr. Gilmore lost his job in March 2009. Because of the resulting layoff, the debtors have below-median income for purposes of the section 707(b)(2) means test.

Mr. Gilmore was re-employed with Mullinax Ford as the special finance manager in late August 2009. The parties dispute the amount of Mr. Gilmore's current income. The chapter 13 trustee testified that she estimates that Mr. Gilmore earns a gross income of approximately $9,000 per month or $108,000 per year. The debtors' Schedule I indicates that Mr. Gilmore presently earns $7,809 in monthly income or $93,708 per year. The debtors' pay stubs for September and October 2009 are consistent with the debtors' estimate. Because these pay stubs are the only documentary

3

evidence of Mr. Gilmore's income, the Court accepts the income on debtors' Schedule I as accurate.

Mrs. Gilmore is a nursing student at Aultman College. The debtors' amended Schedule J lists her tuition at $500 per month, and the debtors incur $1,009 per month in child care expenses for their four children. At the hearing, Mrs. Gilmore testified that the expense for child care was incurred solely because she was attending nursing school. Mrs. Gilmore testified that she has taken out approximately $40,000 in student loans to finance her education, pay for her books, and support her family's lifestyle. However, the debtors failed to list these loans on their schedules. Mrs. Gilmore testified that she is pursuing her education to increase her family's future income.

Debtors' amended Schedule J also lists the debtors' utility expenses: $350 is listed for electricity and heating fuel; $60 is listed for water and sewer; $175 is listed for a phone, cable, and internet bundle; and $150 is listed for cell phones. The chapter 13 trustee testified that she would object to the confirmation of a plan that included these amounts because they are excessive and unnecessary. Neither party has filed documentary evidence of the debtors' actual utility expenses. Overall, the debtors' amended Schedule J indicates a negative cash flow of $508.

The debtors' Schedule D lists first and second mortgages with balances of $137,587 and $34,154, respectively. The value of the debtors' residence is listed as $121,300. Thus, based on the debtors' valuation, the second mortgage is entirely unsecured. The debtors' Schedule F lists $69,861 in unsecured nonpriority claims (not including the unscheduled student loans). These debts include two substantial signature loans taken out in 2007: one in the amount of $14,000 owing to American General Finance; and the other in the amount of $11,000 owing to CitiFinancial.

## ANALYSIS

The debtors contend that they cannot fund a chapter 13 plan. On the other hand, the United States Trustee argues that the debtors' utility, education and childcare expenses should be reduced or disallowed, and, as a result, the debtors can pay off a substantial portion of their unsecured debt in a chapter 13 plan. Thus, the United States Trustee argues that the debtors lack the need requisite to be chapter 7 debtors. The Court agrees with the United States Trustee.

The debtors claim educational and childcare expenses of $1,509 per month. At the hearing, the chapter 13 trustee testified that she would object to any plan that deducted these amounts from the debtors' projected disposable income as being in bad faith pursuant to 11 U.S.C. § 1325(a)(3), or, in the alternative, as unnecessary for the support of the debtors and their dependants under 11 U.S.C. § 1325(b)(2).

4

While neither the parties nor the Court could find a case that discusses whether a debtor's educational expenses and resultant child care expenses are deductible from projected gross income, the Court finds the Sixth Circuit Court of Appeals' pre-BAPCPA treatment of retirement plan contributions to be instructive. In Behlke, the Court stated that "it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend." 358 F.3d at 435. Put another way, chapter 13 debtors should not be permitted create a rich future in which creditors cannot share.[1]

The same reasoning applies to the debtors' education and child care expenses. According to the debtors, "Mrs. Gilmore is trying to improve the lives of herself and her family by seeking an education so as to be able to better support her family in the future." (Objection to Motion to Dismiss at 2.) If the debtors were allowed to take deductions for educational and child care expenses, they would be effectively requiring their creditors pay into a fund to enhance their future income. As long as the debtors' plan does not propose 100% repayment to their unsecured creditors, the debtors cannot take these deductions in good faith.

A different way of viewing the facts follows. Debtors ran up a large amount of debt. They then intentionally decreased their present income and dramatically increased their expenses by Mrs. Gilmore returning to school, enabling them to sidestep chapter 13 in favor of chapter 7. Shortly thereafter, Mrs. Gilmore will complete school and the debtors will have higher income than ever. Creditors will receive nothing.

The debtors point out that there is a public policy that favors education. In In re Savoie, 2006 WL 893610 (Bankr. E.D. Pa. 2006), the court considered whether the debtor's expenditure of $15,000 per year in private school tuition for his minor daughter was an abuse of the bankruptcy process. The court acknowledged a public policy favoring education and admitted "discomfort with stating that parents who want the best education for their child have abused the law." Id. at *3. However, the court held that "a parent's wish for the best education of his child cannot take over, but instead must yield to, the objectives of the bankruptcy code." Id. See also Education Credit Mgmt. Corp. v. Savage (In re Savage), 311 B.R. 835, 841 n.9 (B.A.P. 1st Cir. 2004) ("[P]rivate school tuition is most often considered a luxury expense that amounts to a debtor requiring his or her creditors to donate toward his children's education.").

---

[1] The Court is aware that BAPCPA amended 11 U.S.C. § 541 to exclude retirement contributions from the calculation of disposable income. However, the reasoning of the Behlke court remains persuasive in contexts in which Congress has not taken legislative action to acknowledge a non-bankruptcy policy.

5

The reasoning of the Savoie court applies with even greater force here. The child in Savoie was not responsible for her parent's financial situation. On the other hand, Mrs. Gilmore is an adult and is responsible for her family's finances. As such, she should be required to postpone her education and pay what she reasonably can to her creditors during the commitment period of a chapter 13 plan.

The Court does not hold that debtors should be disallowed all direct and indirect educational expenses. In this case, the facts are extreme. For instance, the debtors have over $1000 per month in child care costs as a direct result of Mrs. Gilmore returning to school and the debtors' educational expenses wipe out any recovery by the unsecured creditors.

In addition, the United States Trustee contends, and the debtor does not dispute, that the second mortgage could be stripped as completely unsecured in a chapter 13 plan. In re Lane, 280 F.3d 663, 668–69 (6th Cir. 2002). As such, a chapter 13 plan that did not strip the second mortgage would not be confirmed because the mortgage payment is not an amount "reasonably necessary to be expended for for the maintenance or support of the debtor or a dependent of the debtor." 11 § U.S.C. 1325(b)(2). Therefore, the Court finds that the debtors' projected disposable income would include their $345 second mortgage payment.

Finally, the United States Trustee invites the Court to examine the debtors' utility expenses. Srikantia, 417 B.R. at 510 (stating that the court may examine expenses to determine their reasonableness). At this time, it is not necessary for the Court to get bogged down in the minute details of the debtors' expenses. However, it is clear that the $150 per month spent on monthly cell phone service is objectionable as unnecessary under section 1325(b)(2). The bankruptcy code demands that the debtors make reasonable sacrifices. Id. In this case the debtors can sacrifice their cell phones because the record does not suggest a special need for cell phones and the debtors have a working ground line.

The Court estimates that the debtors can propose a chapter 13 plan that pays their general unsecured creditors *at least* a 20% dividend over 36 months. The Behlke court dismissed a chapter 7 case because the debtors could pay their creditors a 14% dividend, and, as discussed, the enactment of BAPCPA has reduced the United States Trustee's burden. Therefore, the debtors' ability to pay a meaningful dividend to their general unsecured creditors impels the conclusion that their case be dismissed or converted to a chapter 13.

Additional factors support the conclusion that debtors' case should be converted or dismissed. The debtors' high income is a circumstance that supports dismissal or conversion. Srikantia, 417 B.R. at 511. The debtors' dishonesty in failing to list their student loans debts on their bankruptcy petition also supports conversion or dismissal.

Krohn, 886 F.3d at 126. The only factor that the debtors cite in their favor is Mr. Gilmore's unexpected job loss. However, even if Mr. Gilmore did not become unemployed, the debtors were likely to find themselves in financial trouble sooner or later because of their reckless borrowing habits and sudden increases in child care and education expenses. Therefore, the Court gives this factor little weight.

Accordingly, the debtors have until June 30, 2010 to covert their case to a chapter 13. If the debtors do not convert their case by June 30, 2010, the United States Trustee may submit an order dismissing the debtors' case, and the Court will grant the order without further notice or hearing.

An order will be entered simultaneously with this opinion.

\#   \#   \#

SERVICE LIST:

Brian E. Gilmore
1435 Glenking Ln
Alliance, OH 44601

Tiffanny R. Gilmore
1435 Glenking Ln
Alliance, OH 44601

Michael V Demczyk
Canton
PO Box 867
12370 Cleveland Ave NW
Uniontown, OH 44685

Melissa Joan Acayan
Rauser & Associates
401 W. Tuscarawas Street, NW
Suite #400
Canton, OH 44702

United States Trustee
Suite 441
H.M. Metzenbaum U.S. Courthouse
201 Superior Ave., East
Cleveland, Oh 44114

Dean Wyman ust03
Office of the US Trustee
Howard M. Metzenbaum U.S. Court House
201 Superior Aveneue, Suite 441
Cleveland, Oh 44114-1240

Scott R. Belhorn ust35
Office of the US Trustee
Howard M. Metzenbaum U.S. Courthouse
201 Superior Avenue East
Suite 441
Cleveland, OH 44114-1240